1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAY SCHNEIDER, et al.,                          Civ. No.  S-12-2457 KJM KJN

12              Plaintiffs,

13        v.                                         ORDER

14   COUNTY OF SACRAMENTO, et al.,

15              Defendants.

16   _____

17              Defendant David Bieber's motion to dismiss the First Amended Complaint (FAC)

18   and/or to strike the punitive damage claim is pending before the court.  The court ordered the

19   motion submitted without argument.  After considering the parties' pleadings, the court GRANTS

20   the motion.[1]

21   I.  BACKGROUND

22              On September 27, 2012, plaintiffs Jay Schneider, Susan Schneider, Jake

23   Schneider, Leland A. Schneider, Katherine Schneider, Leland H. Schneider and Jared Schneider

24   (collectively, "plaintiffs" or "Schneiders") filed a complaint raising two civil rights claims against

25   _____

26        [1] Plaintiffs e-mailed to the court a lengthy proposed order, providing their analysis of the
     questions presented by the motion.  Bieber has objected, arguing that the order is in fact an
27   unauthorized sur-reply.  This court's standing order, available on the court's website, notifies
     counsel that proposed orders in motions  to dismiss and motions for summary judgment are not
28   required.  It has not considered this submission.

                                          1

1    the County of Sacramento, Roger Dickinson, Robert Sherry, Jeff Gamel, Cindy Storelli, Leighann

2    Moffitt, Tammy Derby, Carl Simpson, and David Bieber.  Complaint, ECF No. 1 ¶ 3-5.  They

3    alleged that defendants' actions in connection with plaintiffs' property violated the Due Process

4    and Equal Protection clauses of the Fourteenth Amendment, the Takings/Due Process Clause of

5    the Fifth Amendment, and substantive due process.

6                    On May 20, 2013, defendants County of Sacramento, Derby, Dickinson, Moffitt,

7    Sherry, Simpson and Storelli answered the complaint.  ECF Nos. 28-35.

8                    On June 5, 2013, defendant Bieber filed a motion to dismiss, arguing that the

9    claims against him are barred by the *Noerr-Pennington* doctrine, that he did not act under color of

10   state law and that the complaint did not allege his personal participation in constitutional

11   violations.  ECF No. 37.

12                   On June 26, 2012, plaintiffs filed an amended complaint and on June 28, 2013,

13   filed their opposition to the motion to dismiss.  ECF Nos. 39, 40.  On July 11, 2013, the court

14   struck the amended complaint for plaintiffs' failure to seek leave to file it or secure a stipulation

15   from the parties.

16                   On August 1, 2011, the court granted defendant Bieber's motion to dismiss, giving

17   plaintiffs' leave to amend to allege Bieber's personal participation in the alleged constitutional

18   violations.  ECF  No. 44.

19                   On August 21, 2013, plaintiffs filed their First Amended Complaint ("FAC").

20   ECF No. 45.

21                   Bieber filed a motion to dismiss and to strike on September 4, 2013.  ECF No. 46.

22   Plaintiffs have opposed the motion and Bieber has filed a reply.

23                   The following facts are drawn from the First Amended Complaint.

24                   Plaintiffs own, and Joseph Hardesty operates, the Schneider Historic Mine

25   ("Mine") in Sacramento County.  FAC, ECF No. 45 ¶¶ 3, 27-28.  Plaintiffs have a vested right to

26   mine their property.  ECF No. 45 ¶ 3.  They are required to have financial assurances in place to

27   cover the costs of reclaiming the land after mining is completed; an estimate must be presented

28   annually.  ECF No. 45 ¶¶ 122, 179.  Under the Schneider Reclamation Plan, the land must be left

2

1  in a condition appropriate to be used in accordance with the Williamson Act contract that covers

2  the land, which assumes grazing cattle and open space activities.  *Id.*

3        In April 2008, an agent of plaintiffs' competitor Teichert Aggregates told plaintiffs

4  and Hardesty that Teichert was going to put them out of business.  ECF No. 45 ¶ 57.  After

5  Teichert representatives contacted government officials, the defendants, and other government

6  employees not named as defendants, undertook inspections and evaluations of the Mine

7  operations in an attempt to find environmental, zoning, and mining violations.  ECF No. 45

8  ¶¶ 57-74.  The Sacramento County Board of Supervisors' resolution of plaintiffs' appeal from a

9  finding of zoning violations essentially shut down the Mine.  ECF No. 45 ¶¶ 101-108.

10        In November 2009, Sacramento County ("County") entered into a contract with

11  Geocon Consultants and Bieber for the latter to provide expert assistance, third-party expert

12  analysis, and potential expert witness services as needed in response to potential litigation

13  concerning the County's annual inspection of the Mine.  ECF No. 45 ¶ 115.  The contracts

14  variously described Bieber's role as providing an independent third-party review of the Mine's

15  reclamation plan and its financial assurance cost estimate ("FACE"), and conducting required

16  compliance reviews under the Surface Mining and Reclamation Act, CAL. PUB. RES. CODE

17  §§ 2710, et seq. ("SMARA").  *Id.* ¶ 119.  Plaintiffs allege, on information and belief, that the

18  County retained Bieber to conspire with it even as he portrayed himself as a licensed expert, so as

19  to give legitimacy to his claims of violations and recommendation of an inflated FACE.  *Id.*

20  ¶ 121.  They also allege Bieber was hired to inspect only plaintiffs' mining operation.  *Id.* ¶ 215.

21        Under the terms of this contract, Bieber inspected the Mine in 2009, 2010, 2011

22  and 2012 and prepared the reports required under SMARA.  Since 2009, the County has relied on

23  Bieber's calculations to set the FACE for the Mine.  *Id.* ¶ 187.  In his 2010 report, Bieber

24  calculated plaintiffs' FACE to be $164,223.  *Id.* ¶ 185.  Later in 2010, however, he calculated the

25  FACE to be $830,490, based on a false determination that conditions at the Mine no long

26  complied with the SMARA.  *Id.* ¶ 190.  Thereafter, in the 2011 Inspection Report, Bieber

27  recommended plaintiffs should increase their FACE from $164,233 to $830,490, based on "a

28  fraudulent allegation" that an area previously resloped needed to be excavated and resloped again.

ECF No. 45 ¶ 129.  He made this recommendation even though he knew the slopes at the Mine had not been changed from the time he had found them compliant.  *Id.* ¶ 194.

In June 2011, the County Code Enforcement Department sent plaintiffs a "Notice and Order to Comply" based on Bieber's report.  ECF No. 45 ¶¶ 130, 132, 193, 195.  This Notice required plaintiffs to deposit an additional $666,257 in a certificate of deposit payable to the County and to have the property rezoned or face fines.  *Id.* ¶ 132.

A hearing on the notice was rescheduled numerous times before the Board of Zoning Appeals but was finally convened on December 12, 2011.  *Id.* ¶¶ 141-155.  Bieber testified.  *Id.* ¶¶ 154, 202.  At a further hearing on February 6, 2012, the Board considered whether plaintiffs would be required to increase their certificate of deposit to cover projected reclamation costs from $177,952 to $830,490; Bieber concurred in this recommendation.  *Id.* ¶ 165.  Ultimately the FACE was recalculated at $177,942 and on February 8, 2012, plaintiffs increased their deposit to $178,000.  *Id.* ¶¶ 166-167.  Nevertheless, plaintiffs were fined $15,000 for the initial non-compliance with the recommended radically increased FACE, despite the fact that this figure had been ultimately rejected.  *Id.* ¶¶ 159, 173.

The FAC includes more information about the alleged deficiencies in the hearing before the Board of Zoning Appeals and the alleged campaign to close the Mine.

Plaintiffs bring two civil rights claims against all the defendants:  the first claim asserts violations of the Due Process and Equal Protection clauses and the Takings clause stemming from defendants' acting to revoke the vested, legal operations at the Mine; determining that plaintiffs could not continue operations while waiting for the issuance of a conditional use permit even though others in the same position were allowed to continue operations; concluding that plaintiffs' action in moving part of their plant provided cause to revoke the vested right to mine even though other mining operators had undertaken similar actions without a corresponding penalty; selecting Bieber to inspect only plaintiffs' mine; arbitrarily increasing the FACE; ordering plaintiffs to stop mining until the increased assurance was posted; and ordering plaintiffs and the mine operator not to sell any material when similarly situated mining operations were not so constrained.  *Id.* ¶¶ 230-237.  The heading to the second claim asserts a violation of plaintiffs'

1   right to substantive due process but in the body of the claim's averments it alleges a violation of

2   plaintiffs' right to procedural due process in the proceedings to revoke the vested right to mine

3   and a violation of plaintiffs' substantive due process right to operate their mining business.  *Id.*

4   ¶¶ 253-258.

5   II.  STANDARDS FOR A MOTION TO DISMISS

6           Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

7   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

8   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

9   under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

10  1990).

11          Although a complaint need contain only "a short and plain statement of the claim

12  showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

13  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

14  claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

15  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

16  more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

17  conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting

18  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

19  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

20  its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the

21  interplay between the factual allegations of the complaint and the dispositive issues of law in the

22  action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

23          In making this context-specific evaluation, this court must construe the complaint

24  in the light most favorable to the plaintiff and accept as true the factual allegations of the

25  complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

26  conclusion couched as a factual allegation,'"  *Papasan v. Allain*, 478 U.S. 265, 286 (1986),

27  *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to

28  judicial notice" or to material attached to or incorporated by reference into the complaint.

1    *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's

2    consideration of documents attached to a complaint or incorporated by reference or matter of

3    judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United*

4    *States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d

5    1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977,

6    980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

7    dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

8            Defendant argues that plaintiffs' claim for punitive damages must be stricken

9    under Rule 12(f)(2) of the Federal Rules of Civil Procedure.  The Ninth Circuit has held,

10   however, that "Rule 12(f) does not authorize district courts to strike claims for damages on the

11   ground that such claims are precluded as a matter of law."  *Whittlestone, Inc. v. Handi–Craft Co*.,

12   618 F.3d 970, 974 (9th Cir. 2010).  This court may convert this motion to strike to a motion to

13   dismiss under Rule 12(b)(6) when, as here, it is based on a claim that plaintiff has not sufficiently

14   pled fraud, malice or oppression.  *Kelley v. Corrs. Corp. of Am.*, 750 F. Supp. 2d 1132, 1146

15   (E.D. Cal. 2010).  The court will consider this claim as part of defendant's motion to dismiss.

16   III.  ANALYSIS

17           Bieber argues that the First Amended Complaint should be dismissed as to him

18   because it does not adequately allege his personal participation in any acts that violated plaintiffs'

19   civil rights.  He also argues that he cannot be sued in his official capacity, that he is entitled to

20   qualified immunity, and that his actions are protected by California's litigation privilege.

21           A.  Personal Participation in Constitutional Violations

22           A defendant is liable for a civil rights violation only upon a showing of his

23   personal participation in the acts causing the deprivation of rights.  *Taylor v. List*, 880 F.2d 1040,

24   1045 (9th Cir. 1989).  Bieber argues that plaintiffs have not tied him to anything except his 2011

25   inspection and report, with its accompanying recommendation that plaintiffs' FACE be increased

26   by approximately $700,000.  Mot. to Dismiss, ECF No. 46 at 10-11.  Plaintiffs contend, however,

27   that the complaint adequately alleges the County routinely relied on Bieber's calculations in

28   /////

1    setting the FACE and that Bieber dramatically increased the recommendation based on

2    fraudulently calculated costs.  Pls.' Opp'n, ECF No. 56 at 11-12; *see* FAC ¶¶ 187, 194.

3            While it is true that a defendant must have participated in a constitutional violation

4    to be liable under § 1983, that participation need not be direct; rather, "'[t]he requisite causal

5    connection can be established . . . also by setting in motion a series of acts by others which the

6    actor knows or reasonably should know would cause others to inflict the constitutional injury.'"

7    *Kwai Fun Wong v. United States,* 373 F.3d 952, 966 (9th Cir. 2004) (quoting *Johnson v. Duffy*,

8    588 F.2d 740, 743 (9th Cir. 1978) (alteration in original)).  If plaintiffs have sufficiently alleged

9    that it was reasonably foreseeable that Bieber's actions would lead to the constitutional violations

10   alleged, his personal participation is adequately pleaded.  *Id.*; *Estate of Wasilchen v. Gohrman*,

11   870 F. Supp. 2d 1115, 1137 (W.D. Wash. 2012), *aff'd by Tubbs v. Gohrman*,  NO. 12-35414,

12   2013 WL 4574540 (9th Cir. Aug. 29, 2013); *Cooksey v. Taylor*, No. CV 10-9720-JFW (MAN),

13   2011 WL 3756342, at *11 (C.D. Cal. Jul. 26, 2011), *recommendation adopted by*, 2011 WL

14   3756240 (C.D. Cal. Aug. 24, 2011) (stating that a plaintiff must allege a defendant "set in motion

15   a series of acts which he knew would cause others to inflict a constitutional injury").

16           Plaintiffs' description of Bieber's role in recommending the dramatic increase in

17   the FACE based on fraudulent conclusions, coupled with their allegation that the County has

18   relied entirely on Bieber's reports in setting the FACE since 2009, adequately alleges Bieber's

19   indirect participation in the other defendants' decision to increase the FACE.  *See* FAC ¶¶ 191,

20   194, 216.  This is insufficient to plead his role in the ultimate constitutional deprivation, as the

21   increased FACE was ultimately not imposed, apparently in part because of Bieber's

22   recommendation at the zoning hearing that a FACE of $177,952 would be adequate.  Plaintiffs do

23   allege that the County ordered them to cease operations until the increased FACE was posted, but

24   the complaint does not clearly say whether they complied.  Moreover, nothing in the First

25   Amended Complaint suggests that this order to stop mining or the fine imposed were foreseeable

26   to Bieber.  As plaintiffs have not alleged the increased FACE by itself violated their rights, they

27   have not alleged a violation of substantive due process against Bieber.  *See Del Monte Dunes at*

28   *Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir.1990) (discussing the

1  substantive due process claim stemming from city's arbitrary refusal to issue building permit).

2  Finally, plaintiffs' claim that Bieber was part of a large conspiracy to target plaintiffs is too

3  conclusorily pleaded to tie him to the other defendants' alleged plan to close the Mine. *See* FAC

4  ¶ 121 (stating that plaintiffs allege on information and belief that Bieber was retained by the

5  County in order to conspire with the County).  Plaintiffs have not alleged they were deprived of

6  property as a result of Bieber's actions, but will be given one further attempt to amend this claim,

7  if they are able.

8         Bieber also argues he was not involved in the alleged procedural due process

9  violations during the proceedings before the Board of Zoning Appeals and the Board of

10  Supervisors. ECF No. 46 at 12-13.  Plaintiffs respond only generally that Bieber was part of the

11  County's plan to close the Mine.  *See, e.g.,* ECF No. 56 at 11.

12        Nothing in the First Amended Complaint ties Bieber to the many procedural

13  irregularities plaintiffs ascribe to the various proceedings before the Board of Zoning Appeals or

14  the Board of Supervisors and nothing suggests that Bieber, on contract with the County for

15  SMARA compliance purposes, would have any role in such proceedings.  To the extent the

16  complaint can be alleged to plead a procedural due process claim against Bieber, it is dismissed

17  without leave to amend.

18        Moreover, although the First Amended Complaint alleges that defendants hired

19  Bieber to inspect only plaintiffs' mine and not the competitors' mines, it does not allege that

20  Bieber was involved in deciding what mines should be inspected.  FAC ¶ 215.  The equal

21  protection claim against Bieber is also dismissed, without leave to amend.

22        B.  Litigation Privilege

23        Bieber argues that under Rule 501 of the Federal Rules of Evidence, this court

24  applies California evidentiary privileges and that as the First Amended Complaint describes his

25  conduct as related to or a part of litigation and hearings, his actions are protected by California's

26  litigation privilege.

27        California provides an immunity from torts flowing from communications made in

28  any "(1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding

1    authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and

2    reviewable [by mandate]."  CAL. CIV. CODE § 47(b); *see Silberg v. Anderson*, 50 Cal. 3d 205

3    (1990).  Although the short-hand reference to Civil Code §47(b) denominates it as a privilege, its

4    effect is to limit liability or provide immunity from suit if its requirements are met.  *Sagonowsky*

5    *v. More*, 64 Cal. App. 4th 122, 130 (1998).  The Ninth Circuit has also recognized that this

6    section provides immunity rather than establishes an evidentiary privilege and has held this

7    immunity, as any other state immunity, cannot protect defendants from §1983 claims.  *Kimes v.*

8    *Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996).  If plaintiffs are able to amend to state a cause of

9    action as provided by this order, that cause of action will not be barred by Civil Code § 47(b).

10                    C.  Qualified Immunity and Official Capacity Suit

11                    Bieber argues that he cannot be sued in his official capacity because he is not a

12    county employee.  He also argues he is entitled to qualified immunity.

13                    A suit against a government actor in his official capacity "is not a suit against the

14    official but rather is a suit against the official's office.  As such, it is no different from a suit

15    against the State itself."  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).  As Bieber

16    holds no office, he cannot be sued in his official capacity.

17                    In his motion, Bieber argues he is entitled to qualified immunity citing only to

18    cases that discuss the doctrine's application to governmental actors.  Not until the reply does he

19    acknowledge the body of law discussing whether the doctrine applies to non-governmental actors.

20    He cites to *Filarsky v. Delia*, arguing in essence that this Supreme Court case recognizes that

21    qualified immunity extends to all private citizens who undertake governmental functions on a

22    temporary or occasional basis.  ___ U.S. ___, 132 S. Ct. 1657, 1667 (2012).  He distinguishes

23    *Richardson v. McKnight*, 521 U.S. 399 (1997), which held that a guard employed by a private

24    prison was not entitled to qualified immunity by saying that the Supreme Court itself recognized

25    *Richardson*'s narrow holding.  *Id*. at 408-13.

26                    Bieber does not acknowledge *Filarsky's* analytical framework:  the Court first

27    examined the common law in 1871 to determine whether it distinguished between public and

28    private citizens in extending immunity to those involved in the type of investigation at issue, and

                                                        9

1    then considered whether the purposes behind qualified immunity are also applicable when a

2    private actor undertakes a governmental function.  *Id.* at 1662-66; *see also McCullum v. Tepe*,

3    693 F.3d 696, 701-02 (6th Cir. 2012) (stating the first prong of *Filarsky's* analysis requires a

4    court to determine "whether a person in the same position as the party asserting qualified

5    immunity would have been immune from liability under the common law of the late Nineteenth

6    Century.").  The Ninth Circuit has not examined the reach of *Filarsky's* holding and its

7    intersection with that of *Richardson*.  As Bieber has not provided any analysis of whether a

8    person who conducted mine inspections would have been accorded immunity, he has not borne

9    his burden of showing he is entitled to qualified immunity.

10                    D.  Punitive Damages

11                    As plaintiffs have been given leave to amend, the court declines to consider

12    whether the First Amended Complaint adequately alleges the requisites for punitive damages.

13                    IT IS THEREFORE ORDERED that:

14                    1.  Defendant Bieber's motion to dismiss, ECF No. 46, is granted;

15                    2.  Plaintiffs are given leave to amend their claim of substantive due process

16    against Bieber; and

17                    3.  The Second Amended Complaint is due within twenty-one days of the date of

18    this order.

19    Dated:  December 13, 2013.

20

21    _____

22    UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

                                                        10