1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAY SCHNEIDER, et al.,                    Civ. No.  S-12-2457 KJM KJN

12              Plaintiffs,

13       v.                                    <u>ORDER</u>

14   COUNTY OF SACRAMENTO, et al.,

15              Defendants.

16   _____

17            Defendant David Bieber's motion to dismiss the Second Amended Complaint

18   (SAC) and/or to strike the punitive damages claim was submitted without argument.  After

19   considering the parties' pleadings, the court GRANTS the motion in part and DENIES it in part.

20   I.  BACKGROUND

21            On September 27, 2012, plaintiffs Jay Schneider, Susan Schneider, Jake

22   Schneider, Leland A. Schneider, Katherine Schneider, Leland H. Schneider and Jared Schneider

23   (collectively, "plaintiffs" or "Schneiders") filed a complaint raising two civil rights claims against

24   the County of Sacramento, Roger Dickinson, Robert Sherry, Jeff Gamel, Cindy Storelli, Leighann

25   Moffitt, Tammy Derby, Carl Simpson, and David Bieber.  Complaint, ECF No. 1 ¶¶ 3-5.  They

26   alleged that defendants' actions in connection with plaintiffs' property violated the Due Process

27   and Equal Protection Clauses of the Fourteenth Amendment, the Takings/Due Process Clause of

28   the Fifth Amendment, and substantive due process.

                                            1

1            On May 20, 2013, defendants County of Sacramento, Derby, Dickinson, Moffitt,

2    Sherry, Simpson and Storelli answered the complaint.  ECF Nos. 28-35.

3            On June 5, 2013, defendant Bieber filed a motion to dismiss, arguing the

4    complaint did not allege his personal participation in constitutional violations, among other

5    things.  ECF No. 37.

6            On August 1, 2013, the court granted defendant Bieber's motion to dismiss, giving

7    plaintiffs' leave to amend to allege Bieber's personal participation in the alleged constitutional

8    violations.  ECF  No. 44.

9            On August 21, 2013, plaintiffs filed their First Amended Complaint (FAC).  ECF

10   No. 45.

11           Bieber filed a motion to dismiss and to strike on September 4, 2013.  ECF No. 46.

12   Plaintiffs have opposed the motion and Bieber has filed a reply.  ECF Nos. 56, 57.

13           The following facts are drawn from the Second Amended Complaint; the court

14   does not discuss allegations against other defendants who are not challenging the Second

15   Amended Complaint except when necessary to provide background.

16           Plaintiffs own, and Joseph Hardesty operates, the Schneider Historic Mine

17   ("Mine") in Sacramento County.  SAC, ECF No. 62 ¶¶ 3, 27-28.  Plaintiffs have a vested right to

18   mine their property.  *Id*. ¶ 3.  Mines regulated under the Surface Mining and Reclamation Act,

19   CAL. PUB. RES. CODE §§ 2710, *et seq.* ("SMARA") must have financial assurances in place to

20   cover the potential cost of reclaiming the land after mining operations are completed should the

21   owners fail to undertake reclamation.  *Id.* ¶¶ 123, 184.  Under SMARA, all mines must have a

22   Reclamation Plan approved by the "lead agency," in this case Sacramento County, outlining how

23   the mine area will be reclaimed upon the cessation of mining.  *Id*. ¶ 124.

24           The reclamation plan provides the framework for estimating the financial

25   assurance cost estimate ("FACE").  *Id*. ¶ 124.  Once the lead agency agrees to the FACE, it is

26   implemented through a Financial Assurance Mechanism ("FAM"), which is a Certificate of

27   Deposit payable to the County.  *Id*. ¶ 185.

28   */////*

1           Under the Schneider Reclamation Plan ("Plan"), the land must be left in a

2   condition appropriate to be used in accordance with the Williamson Act[1] provisions covering the

3   land. *Id.* ¶ 184.  It also allows for post-reclamation depths of mining pits not to exceed thirty feet.

4   *Id.* ¶¶ 207-208.

5           In April 2008, an agent of plaintiffs' competitor Teichert Aggregates told plaintiffs

6   and Hardesty that Teichert was going to put them out of business.  *Id.* ¶ 57.  After Teichert

7   representatives contacted government officials, the defendants and other government employees

8   not named as defendants undertook inspections and evaluations of the Mine operations in an

9   attempt to find environmental, zoning, and mining violations.  *Id.* ¶¶ 58-72, 74-77.  Eventually, as

10   part of the larger plan to close the Mine, the County of Sacramento essentially closed the

11   operation by finding the mine lacked the necessary zoning and use permits.  *Id.* ¶¶ 80-114.

12           In November 2009, Sacramento County ("County") entered into a contract with

13   Geocon Consultants and Bieber for the latter to provide expert assistance, third-party expert

14   analysis, and potential expert witness services as needed in response to potential litigation

15   concerning the County's annual inspection of the Mine.  *Id.* ¶ 115.

16           Under the terms of this contract, defendant Bieber inspected the Mine in 2009,

17   2010, 2011, and 2012 and prepared the reports required under SMARA.  *Id.* ¶ 118.  Plaintiffs

18   allege on information and belief that the County retained Bieber to provide inflated cost

19   estimates, which would be given legitimacy by Bieber's alleged status as an independent expert.

20   *Id.* ¶ 121.

21           Since 2009, the County has relied on Bieber's calculations to set the FACE for the

22   Mine.  *Id.* ¶¶ 134, 192.

23           On November 17, 2010, the County approved a revised FACE of $164,223 based

24   on Bieber's calculations.  *Id.* ¶ 193.  However, in the 2011 Inspection Report, Bieber

25   recommended plaintiffs should increase their FACE from $164,233 to $830,490 because

26   resloping he had previously approved was no longer compliant.  *Id.* ¶¶ 132, 198.  He made this

27

28           [1] California Government Code §§ 51200, et seq.

1    recommendation based on fraudulent and malicious claims about the resloping, aware the slopes

2    had not been changed since he found them compliant.  *Id.* ¶¶ 133, 202.

3           In June 2011, the County Code Enforcement Department sent plaintiffs a "Notice

4    and Order to Comply" based on Bieber's report.  *Id.* ¶¶ 135, 203.  This Notice required plaintiffs

5    to increase their deposit to $830,490 or face fines of $5,000 a day.  *Id.* ¶ 135.

6           A hearing on the notice was rescheduled numerous times before the Board of

7    Zoning Appeals but was finally convened on December 12, 2011.  *Id.* ¶¶ 142-157.  At a further

8    hearing on February 6, 2012, the Board agreed with plaintiffs' consultant, who said the FACE

9    should be $177,952; Bieber concurred in the consultant's figures.  *Id.* ¶¶ 170, 205.  The County

10   approved the FACE of $177,952.  *Id.* ¶ 208.  On February 8, 2011, plaintiffs raised their FAM to

11   $178,000.  *Id.* ¶ 172.

12          Nevertheless, plaintiffs were fined $15,000 for the initial non-compliance with the

13   increased FACE, despite the fact this figure was ultimately rejected.  *Id.* ¶ 178.  In addition, in

14   March 2012, defendant Derby assessed a $47,000 administrative penalty for plaintiffs' failure to

15   amend the reclamation plan.  *Id.* ¶ 180.

16          According to the Second Amended Complaint, it would be clear to a reasonable

17   person of Bieber's background that his false allegations of SMARA violations and

18   recommendation of an increased FACE would result in the violation of plaintiffs' constitutional

19   rights by the other defendants through the notice of violations and other impacts on protected

20   rights.  *Id.* ¶¶ 198-201.

21          On November 28, 2012, defendant Gamel sent plaintiffs a Notice of Violation,

22   demanding that plaintiffs post a FAM of $8,818,074, based on Bieber's 2012 inspection and

23   report.  *Id.* ¶¶ 213-214.  Bieber justified this increase by alleging the Board of Zoning Appeals

24   had ruled the pits at the Mine had to be backfilled, despite earlier approval of a thirty foot depth

25   for pits.  *Id.* ¶¶ 215-216.  Bieber and the others created this FACE as punishment for plaintiffs'

26   filing this lawsuit.  *Id.* ¶ 218.  It exceeds the total non-mining value of the property and was

27   designed to cripple plaintiffs financially.  *Id.* ¶ 219.  This FACE is not justified, as there was no

28   /////

1      additional land disturbed at the Mine between February and November 2012 and no change in the

2      reclamation plan.  *Id.* ¶ 221.

3      Plaintiffs bring two civil rights claims against all the defendants:  the first claim

4      asserts violations of the Due Process and Equal Protection clauses and the Takings Clause

5      stemming from defendants' acting to revoke the vested, legal operations at the Mine; determining

6      that plaintiffs could not continue operations while waiting for the issuance of a conditional use

7      permit even though others in the same position were allowed to continue operations; concluding

8      that plaintiffs' action in moving part of their plant provided cause to revoke the vested right to

9      mine even though other mining operators had undertaken similar actions without a corresponding

10      penalty; selecting Bieber to inspect only plaintiffs' mine; arbitrarily increasing the FACE;

11      ordering plaintiffs to stop mining until the increased assurance was posted; and ordering plaintiffs

12      and the mine operator not to sell any material when similarly situated mining operations were not

13      so constrained.  *Id.* ¶¶ 237-267.  The second claim alleges a violation of plaintiffs' substantive

14      due process right not to be treated in an arbitrary, unreasonable and malicious manner stemming

15      from defendants' use of the state's police power to deprive plaintiffs of their ability to operate

16      their mining business.  *Id.*  ¶¶ 268-276.  A third civil rights claim, against Bieber alone, alleges

17      Bieber treated plaintiffs in an arbitrary fashion and knew or should have known his

18      recommendation for an  increased FACE would lead to the other defendants' violations of

19      plaintiffs' rights.  *Id.* ¶¶ 278-292.

20      II.  STANDARDS FOR A MOTION TO DISMISS

21      Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

22      dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

23      dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

24      under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

25      1990).

26      Although a complaint need contain only "a short and plain statement of the claim

27      showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

28      to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

1    claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

2    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

3    more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

4    conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting

5    *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

6    for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

7    its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the

8    interplay between the factual allegations of the complaint and the dispositive issues of law in the

9    action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

10           In making this context-specific evaluation, this court must construe the complaint

11   in the light most favorable to the plaintiff and accept as true the factual allegations of the

12   complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

13   conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted

14   in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to

15   judicial notice" or to material attached to or incorporated by reference into the complaint.

16   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's

17   consideration of documents attached to a complaint or incorporated by reference or matter of

18   judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United

19   States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d

20   1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977,

21   980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

22   dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

23   III.  ANALYSIS

24           In its order granting Bieber's motion to dismiss the First Amended Complaint, the

25   court dismissed plaintiffs' equal protection and procedural due process claims against Bieber with

26   prejudice but allowed them to amend their claim that Bieber's actions deprived plaintiffs of

27   substantive due process.  ECF No. 61.

28   /////

6

1    In the instant motion, Bieber argues that the Second Amended Complaint should

2    be dismissed because it still does not adequately allege Bieber's personal participation in any

3    substantive due process violation, a deficiency the court noted in dismissing the FAC.  ECF No.

4    64.  Bieber also argues he is entitled to qualified immunity because he was engaged in

5    government work.  *Id.*

6    Plaintiffs argue Bieber was held out to be a SMARA expert and thus was or should

7    have been aware of the provisions of the Mine's Plan, which provides for natural revegetation and

8    for a depth of no greater than thirty feet for reclaimed mining pits, among other things.  They also

9    claim Bieber should have been aware that under SMARA, a Plan cannot be violated, yet he found

10   Plan violations during his inspections based on a non-existent requirement to backfill mine pits.

11   ECF No. 66 at 7-8.  They also argue Bieber was aware the Board of Zoning Appeals had not ruled

12   the pits had to be filled, but nevertheless used this as his justification for his recommendation the

13   FACE be increased to $8 million.  *Id.* at 11.  Plaintiffs further contend Bieber knew plaintiffs

14   have never been given an opportunity to present evidence and that the proceedings resulting from

15   the 2011 recommendation for an inflated FACE would not afford plaintiffs procedural due

16   process, particularly because Bieber withdrew his recommendation only after meeting with

17   plaintiffs' consultant.  *Id.* at 13.  Finally, they argue Bieber's 2011 recommendation forced them

18   to hire counsel and defend themselves over the course of numerous hearings and resulted in

19   $72,000 in fines.  *Id.*

20   "To state a substantive due process claim, the plaintiff must show as a threshold

21   matter that a state actor deprived it of a constitutionally protected life, liberty or property

22   interest."  *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008); *see also Action Apt. Ass'n, Inc.*

23   *v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007) ("[A] substantive due

24   process claim 'must, as a threshold matter, show a government deprivation of life, liberty, or

25   property.'") (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)).

26   Accordingly, an arbitrary deprivation of a landowner's right to devote his land to a legitimate use

27   may give rise to a substantive due process claim.  *Id.*  A party who challenges a land use action on

28   substantive due process grounds must show the defendant's action was constitutionally arbitrary,

1    *i.e.*, egregious conduct "lacking any reasonable justification in the service of legitimate

2    governmental objective."  *Shanks*, 540 F.3d at 1088 (internal citation & quotation marks omitted);

3    *see also Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007)

4    (recognizing a substantive due process claim must be based on clearly arbitrary actions, having no

5    substantial relation to public health, safety or general welfare).

6                          A.  The 2011 Recommended Increase in the FACE

7                  As the court noted in its prior order, because Bieber ultimately backed off his

8    recommendation to increase the FACE, plaintiffs were not required to post the increased FAM at

9    that time.   Plaintiffs argue, however, that Bieber's false reports alone constitute the requisite

10   arbitrary action sufficient for their substantive due process claim and suggest they need not show

11   any resulting deprivation.  ECF No. 66 at 15.  They analogize Bieber's allegedly false reports to a

12   fabricated forensic report condemned by the Sixth Circuit in *Moldowan v. City of Warren*,

13   578 F.3d 351 (6th Cir. 2009).  In *Moldowan*, however, the Sixth Circuit was considering a civil

14   rights action by a person who alleged that various actions, including a forensic expert's

15   fabrication of results, led to his conviction and the resulting loss of liberty.  It was not the false

16   report, but the effect of the falsity on Moldowan's liberty that drove the litigation.  *See also*

17   *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1039 (D. Minn. 2010) ("'The focus  . . .

18   ordinarily should be on the consequences, if any, not on the mere existence of the report,' because

19   a false report, standing alone, does not deprive a person of substantive due process.") (quoting

20   *Landrigan v. City of Warwick*, 628 F.2d 736, 744-45 (1st Cir. 1980)).  To the extent plaintiffs

21   argue Bieber's reports were false and/or violated SMARA, they do not state a substantive due

22   process claim.  *Brittan v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) ("'[T]here is no general

23   liberty interest in being free from capricious government action.'") (quoting *Squaw Valley Dev.*

24   *Co. v. Goldberg*, 375 F.3d 936, 949 (9th Cir. 2004)); *Shanks*, 540 F.3d at 1089 (stating that

25   generally state law violations do not give rise to substantive due process claims because

26   substantive due process is not a "font of tort law") (internal citation & quotation marks omitted).

27   /////

28   /////

8

1       Accordingly, as Bieber's 2011 report did not ultimately result in an increased

2  FACE and there is no allegation this recommendation caused the Mine to shut down, plaintiffs

3  have not sufficiently alleged a substantive due process violation.

4       Plaintiffs also allege, however, that other defendants imposed fines based on

5  Bieber's 2011 report.  To be liable for a civil rights violation under § 1983, a defendant must have

6  participated in the violation, but that participation may be indirect: "'[t]he requisite causal

7  connection can be established . . . also by setting in motion a series of acts by others which the

8  actor knows or reasonably should know would cause others to inflict the constitutional injury.'"

9  *Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004) (quoting *Johnson v. Duffy*,

10 588 F.2d 740, 743 (9th Cir. 1978) (alteration in original)).  Plaintiffs allege Bieber knew or

11 reasonably should have known that his recommendation would cause other defendants to levy

12 fines and refuse to lift them even after the recommended increase was not adopted.  ECF No. 66

13 at 13.  Plaintiffs have not pleaded sufficient facts to show the County's alleged actions following

14 the issuance of the 2011 report were foreseeable to Bieber, apart from their conclusory claim that

15 they were.  This claim is dismissed without leave to amend.

16       B.  The 2012 Recommendation

17       Bieber argues any claim based on the 2012 recommendation that the FACE be

18 increased from approximately $177,000 to over $8,000,000 cannot lie against him because he

19 based the increase on changes to the regulations governing reclamation and there is no allegation

20 he was involved in drafting the new regulations.  ECF No. 64 at 11.  He misreads the Second

21 Amended Complaint:  plaintiffs allege Bieber "fraudulently and maliciously alleged that the

22 Board of Zoning Appeals had . . . ruled that the pits needed to be backfilled . . . .  Bieber . . . knew

23 the falsity of his allegations . . . ."  SAC ¶¶ 213, 216.  The allegations of the complaint, accepted

24 as true in the light most favorable to plaintiffs, foreclose Bieber's argument he was just relying on

25 new regulations.

26       Bieber next argues the claim is insufficiently pleaded because plaintiffs do not

27 allege the recommendation for the $8,000,000 FACE was accompanied by an order to cease

28 mining or that they have posted the increased FAM.  ECF No. 64 at 12.  Plaintiffs do allege,

1   however, that the recommended FACE is greater than the non-mining value of the property,

2   rendering the property unsaleable and unavailable for use as collateral.  SAC ¶ 210.  They also

3   allege Bieber made this recommendation in order to cripple them financially so they cannot

4   pursue this litigation.  *See Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988) ("A substantive

5   due process claim does not require proof that all use of the property has been denied, but rather

6   that the interference with property rights was irrational or arbitrary."); *see also  Swenson v.*

7   *Siskiyou Cnty.*, 498 F. App'x 719, at *1 (9th Cir. Nov. 20, 2012) (unpublished) (reversing grant of

8   summary judgment because there was a dispute as to whether defendants acted arbitrarily when

9   they invalidated a vested property interest due to political and other considerations).

10          However, "[w]here a particular amendment provides an explicit textual source of

11   constitutional protection against a particular sort of government behavior, that Amendment, not

12   the more generalized notion of 'substantive due process' must be the guide for analyzing these

13   claims."  *Albright v. Oliver*, 510 U.S. 266, 273-74 (1994) (plurality opn.) (quotation marks &

14   citation  omitted).  The Ninth Circuit has said that when another amendment controls, a

15   substantive due process claim is preempted under the rule of *Graham v. Connor*, 490 U.S. 386

16   (1989), which is cited in *Albright*.  *Armendariz v. Penman*, 75 F.3d 1311, 1318 (9th Cir. 1996)

17   (en banc), *overruled on other grounds as stated in Crown Point Dev., Inc. v. City of Sun Valley*,

18   506 F.3d 851, 852-53 (9th Cir. 2007).

19          In this case, plaintiffs allege Bieber recommended the increased FACE in order to

20   prevent them from pursuing this action.  A person has a First Amendment right of access to the

21   courts.  *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002).  "A First Amendment retaliation

22   claim requires Plaintiff to show three elements:  '(1) that the plaintiff was engaged in

23   constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an

24   injury that would chill a person of ordinary firmness from continuing to engage in that activity;

25   and (3) that the defendant's adverse action was substantially motivated as a response to the

26   plaintiff's exercise of constitutionally protected conduct.'"  *Tranquilla v. City & Cnty. of San*

27   *Francisco*, Case No. CV–11–04763 JSC, 2014 WL 554536, at *6 (N.D. Cal. Feb. 7, 2014).  In

28   this case, then, the First Amendment provides the "explicit textual source of constitutional

1  protection" for plaintiffs' claim that Bieber recommended the increased FACE in an attempt to

2  cripple their ability to litigate this case.  This may state a First Amendment claim.  *See Pagan v.*

3  *Calderon*, 448 F.3d 16 (1st Cir. 2006) (rejecting a substantive due process claim for retaliatory

4  acts based on plaintiff's political views).  Plaintiffs will be given leave to amend this portion of

5  their complaint in light of the following, if they are able.

6         C.  Qualified Immunity

7              Bieber argues he is entitled to qualified immunity because he was performing a

8  governmental function in inspecting plaintiffs' property and writing the reports at issue.  ECF

9  No. 64 at 12.    However, as this court is dismissing plaintiffs' remaining substantive due process

10  claim with leave to amend, it need not reach the qualified immunity argument.

11              Bieber argues plaintiffs have not adequately pleaded their claim for punitive

12  damages.

13              Punitive damages are available in a civil rights action under § 1983 when a

14  defendant's conduct "is shown to be motivated by evil motive or intent, or when it involves

15  reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*,

16  461 U.S. 30, 56 (1983).  Plaintiffs have adequately pleaded Bieber's 2012 recommendation was

17  motivated by the intent to cripple their ability to litigate this action.  This is sufficient.

18              IT IS THEREFORE ORDRED that:

19              1.  Bieber's motion to dismiss, ECF No. 64, is granted with prejudice insofar as

20  the complaint alleges he violated plaintiffs' substantive due process rights in recommending an

21  increased FACE in 2011 and granted with leave to amend insofar as the complaint alleges Bieber

22  recommended the increased FACE in 2012;

23              2.  The motion is denied in all other respects; and

24              3.  Plaintiffs' third amended complaint is due within twenty-one days of the date of

25  this order.

26  DATED:  April 3, 2014.

27  _____

28  UNITED STATES DISTRICT JUDGE

11