1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAY SCHNEIDER, et al.,                         Civ. No.  S-12-2457 KJM KJN

12                  Plaintiffs,

13        v.                                        ORDER

14   COUNTY OF SACRAMENTO, et al.,

15                  Defendants.

16   _____

17             Defendant David Bieber's motion to dismiss the Third Amended Complaint

18   (TAC) was submitted without argument and the court now DENIES the motion.

19   I.  BACKGROUND

20             On September 27, 2012, plaintiffs Jay Schneider, Susan Schneider, Jake

21   Schneider, Leland A. Schneider, Katherine Schneider, Leland H. Schneider and Jared Schneider

22   (collectively, "plaintiffs" or "Schneiders") filed a complaint raising two civil rights claims against

23   the County of Sacramento, Roger Dickinson, Robert Sherry, Jeff Gamel, Cindy Storelli, Leighann

24   Moffitt, Tammy Derby, Carl Simpson, and David Bieber.  Compl., ECF No. 1 ¶¶ 3-5.  They

25   alleged that defendants' actions in connection with plaintiffs' property violated the Due Process

26   and Equal Protection Clauses of the Fourteenth Amendment, the Takings/Due Process Clause of

27   the Fifth Amendment, and substantive due process.

28   /////

1

1     On May 20, 2013, defendants County of Sacramento, Derby, Dickinson, Moffitt,

2  Sherry, Simpson and Storelli answered the complaint.  ECF Nos. 28-35.

3     On June 5, 2013, defendant Bieber filed a motion to dismiss, arguing, among other

4  things, the complaint did not allege his personal participation in constitutional violations.  ECF

5  No. 37.

6     On August 1, 2013, the court granted defendant Bieber's motion to dismiss, giving

7  plaintiffs' leave to amend to allege Bieber's personal participation in the alleged constitutional

8  violations.  ECF  No. 44.

9     On August 21, 2013, plaintiffs filed their First Amended Complaint (FAC).  ECF

10  No. 45.   Bieber moved to dismiss and on December 16, 2013, the court granted the motion,

11  giving plaintiffs leave to amend their substantive due process claim.  ECF No. 61.

12     Plaintiffs filed their Second Amended Complaint (SAC) on January 3, 2014.  ECF

13  No. 62.  Bieber again filed a motion to dismiss.  ECF No. 64.  In its January 3, 2014 order, the

14  court dismissed a portion of plaintiffs' substantive due process claim with prejudice, but gave

15  them leave to amend other portions.  In addition, the court noted plaintiffs appeared to be alleging

16  a  First Amendment retaliation claim and so gave them leave to amend in that respect as well.

17  ECF No. 69.

18     Plaintiffs filed their Third Amended Complaint on April 3, 2014,  including both

19  substantive due process and First Amendment retaliation claims against Bieber.  ECF No. 70

20  ¶¶ 263–290.  The following facts, simplified to exclude facts relating solely to other defendants,

21  are taken from the Third Amended Complaint:

22     Plaintiffs own, and Joseph Hardesty operates, the Schneider Historic Mine (Mine)

23  in Sacramento County.  TAC, ECF No. 70 ¶¶ 3, 28.  Plaintiffs have a vested right to mine their

24  property, recognized by Sacramento County (County).  *Id*. ¶¶ 3, 40, 44.

25     Under the Surface Mining and Reclamation Act, Cal. Pub. Res. Code §§ 2710, *et*

26  *seq.* (SMARA), all mines must have a Reclamation Plan approved by the "lead agency," in this

27  case Sacramento County, outlining how the mine area will be reclaimed upon the cessation of

28  mining.  *Id*. ¶¶ 124, 125, 184.  SMARA dictates what a plan must cover.   In 2002, the

1   Sacramento County Board of Supervisors approved a hundred-year reclamation plan covering the

2   3,800 acre Mine.  *Id*. ¶ 51.

3           Mines regulated under SMARA must have financial assurances in place to cover

4   the potential cost of reclaiming the land should the owners fail to undertake reclamation.  *Id.*

5   ¶ 123.  The reclamation plan provides the framework for calculating the financial assurance cost

6   estimate (FACE).  *Id*. ¶¶ 123-124.   Once the lead agency agrees to the FACE, it is

7   implemented through a Financial Assurance Mechanism (FAM), which is a Certificate of Deposit

8   payable to the County.  *Id*. ¶ 185.

9           Under the Schneider Reclamation Plan (Plan), the land must be left in a condition

10  suitable for grazing and outdoor recreation or other uses permitted under the Williamson Act.[1]

11  *Id*. ¶¶ 123, 184.  It also allows for post-reclamation depths of mining pits not to exceed thirty feet.

12  *Id*.

13          In April 2008, an agent of Teichert Aggregates, a competitor, told plaintiffs and

14  Hardesty that Teichert was going to put them out of business.  *Id*. ¶ 57.  After Teichert

15  representatives contacted government officials, the defendants and other government employees

16  not named as defendants undertook inspections and evaluations of the Mine operations in an

17  attempt to find environmental, zoning, and mining violations.  *Id*. ¶¶ 58-78.  The County

18  essentially closed the operation by finding the Mine lacked the necessary zoning and use permits.

19  *Id*. ¶¶ 80, 111.

20          In November 2009, the County entered into a contract with Geocon Consultants

21  and Bieber for the latter to provide independent third-party review of the Mine's reclamation plan

22  and to conduct SMARA compliance inspections.  *Id*. ¶ 119.   In March 2010, Bieber's contract

23  was amended to cover recommendations on plaintiffs' FACE.  *Id*. ¶ 190.  Under the terms of this

24  contract, defendant Bieber inspected the Mine in 2009, 2010, 2011, and 2012 and prepared

25  compliance inspection reports required under SMARA.  *Id*. ¶ 118.  Bieber represents himself as

26  an expert in SMARA and the County has relied on Bieber as a SMARA expert.  *Id*. ¶¶ 126, 200.

27

28          [1] California Government Code §§ 51200, *et seq*.

1    Since 2009, the County has adopted Bieber's allegations of SMARA violations at the Mine and

2    later adopted his recommendations as to plaintiffs' FACE.  *Id*. ¶¶ 134, 192.

3              In 2011, Bieber initially recommended an increase in plaintiffs' FACE from

4    $164,233 to $830,490, justifying the increase on a determination that resloping he had previously

5    approved was no longer compliant with the reclamation plan; he eventually concurred with

6    plaintiffs' consultant that the FACE should be set at $177,952.  *Id*. ¶¶ 132, 170, 198, 206.  The

7    Board accepted the latter amount.  *Id*. ¶¶ 170, 210.

8              Plaintiffs filed suit on September 27, 2012.  *Id*. ¶ 209.

9              Bieber inspected the mine on October 10, 2012 and prepared an inspection report,

10    dated November 16, 2012.  *Id*. ¶ 211.  On November 28, 2012, defendant Gamel sent plaintiffs a

11    copy of this report, as amended on November 27, 2012; it recommended an increased FACE of

12    $8,818,074.  *Id*. ¶ 212.  Between February 2012, when the County approved the $177,952 FACE,

13    and November 2012, there was no additional land disturbed at the Mine, revegetation had been

14    undertaken, and the Mine operator had removed large quantities of scrap, as part of reclamation.

15    *Id*. ¶ 214.  Nevertheless, Bieber justified this increase by claiming the Board of Zoning Appeals

16    (BZA) had ruled the pits at the Mine had to be backfilled, requiring 1.14 million cubic yards of

17    topsoil, despite earlier approval of a thirty foot depth for pits.  *Id*. ¶ 218

18              The November 2012 FACE  exceeds the total non-mining value of the property

19    and was designed to cripple plaintiffs financially because it makes the property unmarketable and

20    unusable as collateral.  *Id*. ¶¶ 221, 223.  In addition, if plaintiffs do not post adequate financial

21    reserves, the County can forfeit the already-posted FAM and take over the Mine.  *Id*. ¶ 222.

22    Bieber and the others created the excessive FACE as punishment for plaintiffs' filing this lawsuit.

23    *Id*. ¶ 219.   This increased FACE has restricted plaintiffs' ability to fund this litigation.  *Id*. ¶ 224.

24              The complaint contains two claims against Bieber.  The first is a claim that

25    Bieber's recommendation for this exponentially increased FACE violated plaintiffs' substantive

26    due process rights.  *Id*. ¶¶ 263-280.  The second is that Bieber violated plaintiffs' First

27    Amendment right of access to the court by proposing the increased FACE in retaliation for

28    plaintiffs' filing the lawsuit. *Id*. ¶¶  281-290.

1    In the instant motion, Bieber seeks dismissal of plaintiffs' substantive due process

2  and First Amendment retaliation claims.  ECF No. 74 at 8.

3  II.  STANDARDS FOR A MOTION TO DISMISS

4    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

5  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

6  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

7  under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

8  1990).

9    Although a complaint need contain only "a short and plain statement of the claim

10  showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion

11  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

12  claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

13  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

14  more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

15  conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting

16  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

17  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

18  its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the

19  interplay between the factual allegations of the complaint and the dispositive issues of law in the

20  action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

21    In making this context-specific evaluation, this court must construe the complaint

22  in the light most favorable to the plaintiff and accept as true the factual allegations of the

23  complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

24  conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted

25  in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to

26  judicial notice" or to material attached to or incorporated by reference into the complaint.

27  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's

28  consideration of documents attached to a complaint or incorporated by reference or matter of

1    judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United*

2    *States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d

3    1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977,

4    980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

5    dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

6    　　　　　Defendant claims the action against him should be dismissed for four reasons:

7    (1) in its earlier order of January 3, 2014, the court found the substantive due process claim to be

8    subsumed in the retaliation claim; (2) the litigation history shows defendant did not have

9    knowledge of the suit when he recommended the increased FACE in 2012; (3) the action is

10    barred by the *Noerr-Pennington* doctrine; and (4) he is entitled to qualified immunity.

11    III.  ANALYSIS

12    　　　　　　A.  Substantive Due Process

13    　　　　　　　　1.  Introduction

14    　　　　　The parties dispute whether the First Amendment retaliation claim preempts the

15    substantive due process claim.  ECF No. 74 at 9; ECF No. 78 at 11.  Before analyzing the

16    preemption issue, the court addresses some preliminary matters.

17    　　　　　First, this court has not "previously explained" that the "substantive due process

18    claim is pre-empted by the First Amendment."  ECF No. 74 at 8.  Bieber apparently misconstrues

19    the court's January 3, 2014 grant of leave to amend to allege a First Amendment retaliation claim.

20    ECF No. 69 at 11.  In that order, the court's reference to the doctrine of preemption appeared as

21    part of a more general discussion on the applicable rule of law that would apply if the plaintiffs

22    were able to properly plead a First Amendment retaliation claim.  *Id.* at 10 (discussing the rule in

23    *Graham v. Connor*, 490 U.S. 386, 395 (1989), that a substantive due process claim is preempted

24    when another amendment controls).  Contrary to Bieber's assertion, however, the court did not

25    decide at that time that the "substantive due process claim is pre-empted by the First

26    Amendment."  ECF No. 74 at 8.  Rather, the court granted leave to amend.  ECF No. 69 at 11.  In

27    any event, as the First Amendment retaliation claim was a matter outside of the pleadings as of

28    /////

1    January 3, 2014, that claim was not properly before the court on a motion to dismiss. Fed. R. Civ.

2    P. 12(b)(6). Thus, the court could not have previously decided the preemption issue.

3          Second, Bieber contends plaintiffs have alleged "identical cause[s] of action."

4    ECF No. 74 at 10. The claims are not literally identical: one arises under the First Amendment

5    and one under the Fourteenth Amendment. ECF No. 70 ¶¶ 263–290. The court understands

6    Bieber to mean that the claims are duplicative in the sense that plaintiffs attempt to impermissibly

7    "double up" their constitutional claims, an issue discussed below. *Ramirez v. Butte-Silver Bow*

8    *Cnty.*, 298 F.3d 1022, 1029 (9th Cir. 2002) (analyzing claim under the Fourth Amendment but not

9    under substantive due process), *aff'd on other grounds Groh v. Ramirez*, 540 U.S. 551 (2004).

10          Third, Bieber is incorrect that plaintiffs are "resurrect[ing] the Substantive Due

11   Process Claim." ECF No. 79 at 3. This claim was never completely dismissed. In its January 3,

12   2014 order, the court expressly dismissed without leave to amend the substantive due process

13   claim with respect to the 2011 FACE, ECF No. 69 at 9, but dismissed with leave to amend

14   "plaintiffs' remaining substantive due process claim," *id.* at 11. Furthermore, the court's

15   statement that, "[i]n this case, then, the First Amendment provides the 'explicit textual source of

16   constitutional protection' for plaintiffs claim," cannot be construed as a legal conclusion that the

17   court has altogether dismissed the substantive due process claim. *Id.* at 10–11. Rather, the

18   phrase, "[i]n this case," can only fairly be read as meaning, "if it is the case that . . .", a

19   construction that is supported by the next sentence in the paragraph, "This *may* state a First

20   Amendment claim." *Id.* at 11 (emphasis added). Thus, the court's January 3, 2014 order left open

21   to a later date the determination of whether plaintiffs would be able to state a revised substantive

22   due process claim, a First Amendment retaliation claim, neither, or both.

23                    2. Preemption Analysis Under *Graham*

24          The court's first step in a Section 1983 claim is to clarify the allegations of the

25   complaint by "identify[ing] the specific constitutional right allegedly infringed." *Albright v.*

26   *Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion). Here, plaintiffs assert a First Amendment

27   retaliation claim, ECF No. 70 ¶ 281, as well as a substantive due process claim for violations of a

28   "property-interest in their right to produce aggregate on their ranch, and in the material they have

1    mined and stockpiled on the Property," a "liberty interest in pursuing their chosen occupation or

2    profession of surface mining," and a "right to be free of government conduct toward them which

3    shocks the conscience."  *Id.* ¶¶ 265–267.

4         Bieber argues that "[p]laintiffs' substantive due process cause of action is

5    preempted by a cause of action under the First Amendment."  ECF No. 74 at 9.  Bieber relies on

6    *Albright*, which held that "[w]here a particular Amendment provides an explicit textual source of

7    constitutional protection against a particular sort of government behavior, that Amendment, not

8    the more generalized notion of substantive due process, must be the guide for analyzing these

9    claims."  510 U.S. at 274 (citing *Graham*, 490 U.S. at 395) (internal quotation marks omitted);

10   ECF No. 74 at 10; ECF No. 79 at 3–4.

11        *Graham* does not preempt plaintiffs' substantive due process claim in this case.

12   The Ninth Circuit has explained that "*Graham* simply requires that if a constitutional claim is

13   covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the

14   claim must be analyzed under the standard appropriate to that specific provision, not under the

15   rubric of substantive due process."  *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851,

16   855 (9th Cir. 2007) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)) (internal

17   quotation marks omitted).  In other words, *Graham* would apply only if plaintiffs were trying to

18   bring what is essentially a duplicative First Amendment claim under the "more generalized notion

19   of substantive due process." *Albright*, 510 U.S. at 273 (internal quotation marks omitted).  But

20   plaintiffs are not trying to base a substantive due process claim on a violation of their First

21   Amendment rights.  ECF No. 70 ¶¶ 263–280.  Instead, they base their substantive due process

22   claim on a violation of their right to be free from arbitrary and capricious government interference

23   with a property interest, of their right to liberty of occupation, and of their right to be free from

24   government conduct that shocks the conscience.  *Id.* ¶¶ 265–267.  This is a case in which two

25   different and independent rights arise out of one set of facts.

26        When a court is faced with several possible claims on the same set of facts, "[t]he

27   proper question is not which Amendment controls but whether either Amendment is violated."

28   *United States v. James Daniel Good Real Property*, 510 U.S. 43, 50 (1993); *Webb v. Cnty. of*

1    *Trinity*, 734 F. Supp. 2d 1018, 1027 (E.D. Cal. 2010) ("Of course, an action may violate multiple

2    constitutional prohibitions, and not every substantive due process claim will be duplicative.").

3

4

5

6

> Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's "dominant" character. Rather, we examine each constitutional provision in turn.

7    *Soldal v. Cook Cnty., Ill.,* 506 U.S. 56, 70 (1992); *accord James Daniel*, 510 U.S. at 49 ("We

8    have rejected the view that applicability of one constitutional amendment pre-empts the

9    guarantees of another.").

10           *Graham* stands for the Court's "reluctan[ce] to expand the concept of substantive

11    due process" where there is an "explicit textual source of constitutional protection." *Lewis*,

12    523 U.S. at 842 (internal quotation marks omitted); *accord Armendariz v. Penman*, 75 F.3d 1311,

13    1325 (9th Cir. 1996) (en banc) ("*Graham* reflects the principle that courts should not expand the

14    constitutional protections afforded by the Bill of Rights in those areas specifically addressed by

15    the first eight amendments."), *overruled in part on other grounds as stated in Crown Point Dev.,*

16    *Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007). Under *Graham*, preemption occurs only

17    when the substantive due process claim "can be vindicated under a different — and more precise

18    — constitutional rubric." *Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d

19    1020, 1025 (9th Cir. 2007). In *Graham*, the Supreme Court rejected a substantive due process

20    claim under the Fourteenth Amendment "[b]ecause the Fourth Amendment provides an explicit

21    textual source" of a challenge to a seizure. 490 U.S. at 395. In *Albright*, the Court rejected a

22    substantive due process claim because the Fourth Amendment addresses matters of pretrial

23    deprivations of liberty. 510 U.S. at 274-75. Thus, to the extent that the "conduct alleged" within

24    a plaintiff's substantive due process claim "falls within" an explicit textual source in the

25    constitution, the claim "must be analyzed" under the more explicit constitutional amendment.

26    *Crown Point*, 506 F.3d at 855–56; *accord Richardson v. City of Antioch*, 722 F. Supp. 2d 1133,

27    1145 n.5 (N.D. Cal. 2010) (noting that substantive due process claims exceeding the scope of

28    other constitutional claims were not preempted by *Graham*).

1    In addition, *Graham* is intended to prevent plaintiffs from "'doubl[ing] up'

2  constitutional claims." *Ramirez*, 298 F.3d at 1029.  In *Hufford v. McEnaney*, the court found that

3  a firefighter's First Amendment retaliation claim preempted a substantive due process claim

4  based on the same retaliatory discharge.  249 F.3d 1142, 1151 (9th Cir. 2001).  The court

5  reasoned that "because the First Amendment explicitly covers Hufford's claim, the First

6  Amendment, not the Fourteenth Amendment's guarantee of substantive due process, should guide

7  the analysis of [plaintiff's] claim[s]." *Id.* (internal quotation marks omitted); *see Buchanan v.*

8  *Garza*, No. 08cv1290 BTM, 2010 WL 2985075, at *4 & n.3 (S.D. Cal. July 27, 2010) (declining

9  to consider a substantive due process claim when plaintiff based First Amendment access to

10  courts and retaliation claims on the same behavior); *Occhionero v. City of Fresno*,

11  No. CV F 05-1184 LJO SMS, 2007 WL 1302432, at *5 (E.D. Cal. May 1, 2007) (considering

12  both First Amendment retaliation and Takings claims).  To determine whether a claim is

13  preempted under *Graham*, the court "examine[s] each constitutional provision in turn." *Soldal*,

14  506 U.S. at 70.

15    To establish a violation of substantive due process, plaintiffs must show that the

16  state action was "arbitrary and irrational," *Del Monte Dunes at Monterey, Ltd. v. City of*

17  *Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990), and "clearly arbitrary and unreasonable, having

18  no substantial relation to the public health, safety, morals, or general welfare," *Euclid v. Ambler*

19  *Realty Co.*, 272 U.S. 365, 395 (1926); *see Shanks* v. *Dressel*, 540 F.3d 1082,1089 (9th Cir. 2008)

20  (stating that a "sudden change in course, malice, bias or pretext" suggests constitutional

21  arbitrariness).  "An arbitrary deprivation of [rights in real property] may give rise to a viable

22  substantive due process claim in any case in which the Takings Clause does not provide a

23  preclusive cause of action." *Action Apartment*, 509 F.3d at 1026.

24    Plaintiffs allege that Bieber's actions were "arbitrary and irrational"  in light of the

25  massive increase in the FACE from 2011 to 2012 without an accompanying change in conditions

26  justifying the increase.  *Del Monte Dunes*, 920 F.2d at 1508; ECF No. 70 ¶¶ 206, 207, 212, 214.

27  Moreover, to the extent the sharp increase is based on reasons not justified by the actual

28  conditions on the mine, it is the sort of "invention" that could support a claim that Bieber's

1   actions were arbitrary and capricious.  *See Simi Inv. Co. v. Harris Cnty.*  236 F.3d 240, 254 (5th

2   Cir. 2000)  ("We hold that the invention of a park solely to deny private property holders lawful

3   access to an abutting street is an abuse of governmental power, which . . . rises to the level of a

4   substantive due process violation."); *Merrill v. Cnty. of Madera*, No. 1:05-CV-0195 AWI SMS,

5   2013 WL 1326542 at *7 (E.D. Cal. Mar. 29, 2013) (unpublished) ("The court recognizes that a

6   defendant's 'invention' of an illegitimate reason to support a land use action and regulation can

7   be arbitrary and capricious.").

8           In addition, plaintiffs allege the existence of "political pressure."  *Del Monte*

9   *Dunes*, 920 F.2d at 1508 (finding the City's denial of building permit "arbitrary and irrational"

10  where the City "was motivated, not by legitimate regulatory concerns, but by political pressure

11  from neighbors and other residents of the city").  Plaintiffs describe a "politically backed plan" to

12  put plaintiffs out of business.  ECF No. 70 ¶ 73.  Plaintiffs allege collusive political activity

13  between various members of state and local government, as well as the neighbors "immediately

14  south of the Schneider ranch."  *Id.*  ¶¶ 56–79.[2]

15          As discussed more completely below, a First Amendment retaliation claim has

16  three elements:  (1) plaintiff was engaged in protected activity; (2) defendant's actions injured

17  plaintiff in a way that would chill a person of ordinary firmness from further protected activities;

18  and (3) defendant's actions were a response to plaintiff's exercise of constitutionally protected

19  conduct.  *Corales v. Bennett*, 567 F.3d 554, 563 (9th Cir. 2009).  Plaintiffs allege that Bieber

20  recommended the increased FACE in part because of a desire to cripple their pursuit of the instant

21  lawsuit.

22          Here, the conduct alleged within the plaintiffs' substantive due process claim falls

23  outside the "explicit textual source" of the First Amendment.  *Soldal*, 506 U.S. at 70 (internal

24  quotation marks omitted).  Plaintiffs allege non-First Amendment harm to their property interests,

25          [2] Defendant argues only that the substantive due process claim is preempted by the First
26  Amendment retaliation claim and does not otherwise claim the substantive due process
    allegations fail to state a claim.  Accordingly, the court will not analyze the liberty of occupation,
27  damage to reputation, and shocks the conscience aspects of the substantive due process claim, as
    its discussion of the claim in the body of this order is sufficient to explain the differences between
28  the due process and retaliation claims.

1  liberty interest in occupation, and right to be free from government conduct that is shocking to the

2  conscience, as noted.  ECF No. 70 ¶¶ 265–267.  Even if the claims stem from the single "wrong"

3  of the 2012 FACE, a single "wrong[] . . . can implicate more than one of the Constitution's

4  commands."  *Soldal*, 506 U.S. at 70.  For *Graham* to apply, the claims would have to "target[] the

5  same sort of governmental conduct."  *Id.*  Here, plaintiffs based their substantive due process

6  claim on actions that were arbitrary and irrational or motivated by improper political pressure,

7  among other things, and their retaliation claim on actions designed to hamper their pursuit of this

8  case.  ECF No. 70 ¶¶ 263–280.  Thus, as these claims target different government conduct, the

9  substantive due process claim is not preempted by the First Amendment retaliation claim.

10                  B.  First Amendment

11                  "A First Amendment retaliation claim requires Plaintiff to show three elements:

12  '(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's

13  actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from

14  continuing to engage in that activity; and (3) that the defendant's adverse action was substantially

15  motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'"

16  *Corales* 567 F.3d at 563; *Tranquilla v. City of San Francisco*, No. CV–11–04763 JSC, 2014 WL

17  554536, at *6 (N.D. Cal. Feb. 7, 2014).

18                  "The First Amendment 'right of the people . . . to petition the Government for a

19  redress of grievances,' which secures the right of access to the courts, has been termed 'one of the

20  most precious of liberties safeguarded by the Bill of Rights.'"  *Ringgold-Lockhart v. Cnty. of*

21  *Los Angeles*, ___F.3d ___, 2014 WL 3805579, at *2 (9th Cir. Aug. 4, 2014) (quoting *BE & K*

22  *Const. Co. v. NLRB*, 536 U.S. 516, 524-25 (2002)) (internal quotation marks omitted; alteration in

23  original).  Plaintiffs allege Bieber's sharply increased FACE recommendation came after

24  plaintiffs had exercised their right of access to the courts by filing the instant law suit and was

25  motivated by it.  In addition, they allege the increased FACE effectively put them out of business,

26  something likely to chill a person of ordinary firmness from continuing with the protected

27  activity.  *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (stating that

28  claim of retaliation for public criticism of defendants stated a First Amendment retaliation claim).

1    Defendant argues he was unaware plaintiffs had filed suit when he recommended

2  the 2012 FACE and points to the summons on the court's docket, showing he was served on

3  April 29, 2013.  ECF No. 74 at 12; ECF No. 12.  Whether plaintiffs will be able to fend off

4  summary judgment on this claim is not before the court:  at this stage of the proceedings, the

5  court must draw reasonable inferences and read the complaint in the light most favorable to

6  plaintiffs.  Here the complaint sufficiently pleads Bieber was aware of the suit when he

7  recommended the increased FACE in his report of November 16, 2012.  ECF No. 70 ¶¶ 211, 282,

8  284.

9    Defendant also argues the increased FACE has not injured plaintiffs in a way that

10  would chill someone from pursuing this suit because they have not alleged the County has

11  actually required them to post the new FAM or that they have pursued their statutory appeal

12  rights.  ECF No. 74 at 12-13.  As noted, however, plaintiffs allege the County has followed

13  Bieber's recommendations since 2009.  ECF No. 70  ¶¶ 134, 192.  They also allege the increased

14  FACE exceeds the value of the mine, rendering it unsaleable.  *Id*. ¶ 221.  This is a sufficient

15  injury.

16    C.  The *Noerr-Pennington* Doctrine

17    The *Noerr-Pennington* doctrine derives from the First Amendment clause

18  guaranteeing "the right of the people . . . to petition the Government for a redress of grievances."

19  *Sosa v. DIRECTV, Inc*., 437 F.3d 923, 929 (9th Cir. 2005). Although it originally protected those

20  who petition the legislature from being vulnerable to antitrust liability, it now applies more

21  broadly, covering the petitioning of any branch of government, including litigation activities

22  before courts and administrative tribunals. *Theme Promotions Inc., v. News Am. Marketing FSI*,

23  546 F.3d 991, 1006-07 (9th Cir. 2008); *Fischer Sand & Aggregate Co. v. City of Lakeville*,

24  874 F. Supp. 957, 959 (D. Minn. 1994) (extending immunity to government officials' opposition

25  to request for new zoning designation); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S.

26  508, 510-11 (1972) (extending the doctrine to activities before administrative tribunals).  The

27  Ninth Circuit has described the doctrine as "a generic rule of statutory construction, applicable to

28  any statutory interpretation that could implicate the rights protected by the Petition Clause."

13

1    *Sosa*, 437 F.3d at 931.  "[T]he First Amendment rationale of the *Noerr-Pennington* doctrine

2    extends beyond anti-trust suits to civil rights actions as well.  Thus, activity protected by *Noerr-*

3    *Pennington* cannot form the basis of section 1983 liability."  *Boulware v. State of Nev., Dep't of*

4    *Human Res.*, 960 F.2d 793, 800 (9th Cir. 1992).

5                While "petitioning" literally refers to communications directed toward a court,

6    protecting the First Amendment right to petition requires that courts also give "breathing space"

7    to speech made outside of court but that is related to litigation.  *Sosa*, 437 F.3d at 932.  Thus, the

8    *Noerr-Pennington* doctrine applies to "conduct incidental to the prosecution of the suit, such as

9    pre-suit demand letters, *id*. at 925, and other actions "'undertaken in the course of representing a

10   client in litigation.'" *Ungureanu v. A. Teichert & Son*, No. CIV S–11–0316 LKK GGH PS, 2012

11   WL 1108831, at *7 (E.D. Cal. Apr. 2, 2012) (quoting *Lynn v. Friedenthal*, No. CV 09–08717–

12   PSG (VBK), 2011 WL 6960823, at *7 (C.D. Cal. Dec. 2, 2011)).  Thus, "'conduct incidental to' a

13   petition is protected by *Noerr-Pennington* if the petition itself is protected," *Freeman v. Lasky*,

14   *Hass & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (quoting *Theofel v. Farey-Jones*, 359 F.3d

15   1066, 1078 (9th Cir. 2004)), as is conduct undertaken by lawyers, employees and agents of the

16   petitioning party.  *Id*. at 1186.

17              Defendant acknowledges the court rejected his *Noerr-Pennington* challenge to the

18   original complaint, but argues the Third Amended Complaint provides additional detail.  ECF

19   No. 74 at 16.  Specifically he says the Third Amended Complaint identifies him as a consultant

20   for potential litigation concerning the mine and connects his inspections to the proceedings before

21   the BZA.  *Id*.

22              It is true the Third Amended Complaint describes Bieber as a "consultant to

23   provide expert assistance, third-party expert analysis, and potential expert witness services as

24   needed in response to potential litigation . . . ."  ECF No. 70 ¶ 115.  Defendant has not cited and

25   the court has not found a case extending the immunity to a person hired as potential expert

26   witness when there is nothing suggesting a lawsuit was in fact contemplated when he was hired.

27   He has not suggested how a lawsuit burdens petitioning activity when there is only the potential

28   of such activity.  *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009)

1    (stating the first step in *Noerr-Pennington* analysis is whether the lawsuit imposes burden on

2    petitioning rights).

3            In addition, defendant claims the Third Amended Complaint connects his

4    inspection of the mine to proceedings before the BZA.  ECF No. 74 at 16.  He points to paragraph

5    119 of the Third Amended Complaint, which says nothing about the BZA but rather identifies

6    how he allegedly describes himself in his various reports, and paragraph 126, which claims

7    defendant has represented himself as an expert in SMARA.   Paragraph 126 does say he "has

8    been used by the county in multiple hearings," but as the paragraph does not identify the hearings,

9    the court cannot determine whether they were part of the County's petitioning activity.  Paragraph

10   141 mentions a hearing before the BZA, but does not connect defendant to that proceeding.

11           Defendant fares better with paragraphs 158 and 169, which discuss Bieber's

12   testimony before the BZA in connection with his 2011 FACE proposal.  However, this court has

13   previously found that defendant's activities in connection with the 2011 FACE do not state a

14   claim, so his petitioning activity in connection with that recommendation cannot be said to be

15   burdened by this lawsuit.  As he has not otherwise identified any petitioning activities in

16   connection with the 2012 FACE, his reliance on the *Noerr-Pennington* doctrine is misplaced.

17           D.  Qualified Immunity

18           As he has in earlier motions to dismiss, defendant argues he is entitled to qualified

19   immunity.  ECF No. 74 at 17-21.  The court did not address the argument in connection with the

20   Second Amended Complaint in light of the dismissal of the substantive claims with leave to

21   amend.  ECF No. 69 at 11.   In rejecting the claim made as part of the motion to dismiss the First

22   Amended Complaint, the court observed defendant had not borne his burden of demonstrating his

23   entitlement to the doctrine.  ECF No.  61 at 9-10.

24            In the current motion, defendant  relies on *Filarsky v. Delia*, arguing that under

25   this case, qualified immunity extends to those who undertake governmental functions on a

26   temporary or occasional basis.  ___ U.S. ___, 132 S. Ct. 1657, 1667 (2012).  In *Filarsky*, the

27   Supreme Court considered whether an attorney who assisted government employees in their

28   investigation of a firefighter alleged to be faking his injuries was entitled to rely on qualified

15

1   immunity.  *Id*. at 1660-61.  The court agreed that the attorney's part-time status did not control

2   the inquiry, *id*. at 1665, but instead examined the common law in 1871, when 42 U.S.C. § 1983

3   was enacted, to determine whether it distinguished between public and private citizens in

4   extending immunity to those involved in the type of investigation at issue.  *Id*. at 1662.  It then

5   considered whether the purposes behind qualified immunity are also applicable when a private

6   actor undertakes a governmental function.  *Id*. at 1662-66; *see also McCullum v. Tepe*, 693 F.3d

7   696, 701-02 (6th Cir. 2012) (stating the first prong of *Filarsky's* analysis requires a court to

8   determine "whether a person in the same position as the party asserting qualified immunity would

9   have been immune from liability under the common law of the late Nineteenth Century").

10          Defendant argues the policies underlying qualified immunity—avoiding timidity

11   in the performance of public duties, ensuring that people are not deterred from public service, and

12   preventing lawsuits from distracting people from government work—apply equally to a

13   contractor engaged to inspect mines and enforce environmental laws.  ECF No. 74 at 19.

14          Defendant provides no independent examination whether a geologist or one

15   involved in civil enforcement would have been entitled to immunity in 1871, but instead relies on

16   the *Filarsky* court's examples:  immunity was extended to private citizens who acted as justices of

17   the peace and assisted in the execution of warrants, among other things.  *Id*. at 1665.  He

18   analogizes his position to those enlisted to execute warrants, arguing that he is empowered to

19   enter onto mine property to carry out an inspection.  ECF No. 74 at 20.

20          In addition, he attempts to distinguish *Richardson v. McKnight*, 521 U.S. 399

21   (1997), which held that a guard employed by a private prison was not entitled to qualified

22   immunity, by saying that the Supreme Court itself recognized *Richardson*'s narrow holding.  *Id*.

23   at 408-13.  In *Richardson*, the Supreme Court said "a private firm, systematically organized to

24   assume a major, lengthy administrative task . . . with limited direct supervision by the government

25   for profit and potentially in competition with other firms" was not entitled to assert qualified

26   immunity, whereas "a private individual briefly associated with a government body, serving as an

27   adjunct to government in an essential governmental activity, or acting under close official

28   supervision" might be able to claim protection.  *Id*.

1    Although defendant makes a more robust showing now in support of his claim for

2    qualified immunity, the court need not at this point definitely decide whether he has established

3    the historical basis for his claim of immunity.  Government officials performing discretionary

4    functions generally are shielded from liability for civil damages insofar as their conduct does not

5    violate clearly established statutory or constitutional rights of which a reasonable person would

6    have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In determining whether a

7    governmental officer is immune from suit based on the doctrine of qualified immunity, the court

8    generally considers two questions.  The district court may decide the order of addressing these

9    questions and answer only the second, in accordance with fairness and efficiency and in light of

10   the circumstances of a particular case.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The first

11   is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the

12   officer's conduct violated a constitutional right?  *Saucier v. Katz*, 533 U.S. 194, 201 (2001),

13   *overruled on other grounds by Pearson*, 555 U.S. 223.  A negative answer ends the analysis, with

14   qualified immunity protecting defendant from liability.  *Id.*  If a constitutional violation occurred,

15   a court must further inquire "whether the right was clearly established."  *Id*.  "If the law did not

16   put the [defendant] on notice that [his] conduct would be clearly unlawful," he is entitled to the

17   protection of qualified immunity."  *Id*. at 202.  A right is clearly established if "the state of law at

18   the time gives officials fair warning that their conduct is unconstitutional."  *Ellins v. City of*

19   *Sierra Madre*, 710 F.3d 1049, 1065 (9th Cir. 2013).  The Supreme Court has emphasized that "the

20   qualified immunity inquiry must be undertaken in light of the specific context of the case."

21   *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

22   As noted above, plaintiffs have adequately pleaded that in 2012 defendant

23   deprived them of property rights arbitrarily, in response to political pressure; yet the Ninth Circuit

24   had said that a city council's rejection of the landowner's request to build condominiums because

25   of pressure from neighboring landowners violated due process, *Del Monte Dunes*, 920 F.3d at

26   1508, and an arbitrary deprivation of a property right might give rise to a substantive due process

27   claim.  *Action Apt. Ass'n*, 509 F.3d at 1026.  Moreover, the court has also recognized that actions

28   taken in retaliation for protected activities are improper.  *Soranno's Gasco*, 874 F.2d at 1314.  A

17

1  reasonable county official would have been aware that arbitrary, retaliatory actions could have

2  violated plaintiffs' rights.  Defendant has not shown he is entitled to qualified immunity.

3          IT IS THEREFORE ORDERED that:

4          1. Defendant's motion to dismiss, ECF No. 74, is denied; and

5          2.  Defendant's answer is due within twenty-one days of the date of this order.

6  DATED:  August 20, 2014.

7

8  _____

9  UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28